O

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | | |
|---|---|---|
| OLIVIA HUERTA, | ) | Case No. EDCV 11-1868-MLG |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OPINION AND ORDER |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

     Plaintiff Olivia Huerta ("Plaintiff") seeks judicial review of
the Commissioner's final decision denying her application for
disability insurance benefits ("DIB") pursuant to Title II of the
Social Security Act. For the reasons stated below, the decision of
the Commissioner is affirmed and the action is dismissed with
prejudice.

**I. BACKGROUND**

     Plaintiff was born on November 19, 1966. (Administrative
Record ("AR") at 698.) She has relevant work experience as a food
server, bakery manager, and warehouse worker. (AR at 652.)
Plaintiff first filed her application for benefits on June 23,

1

2006, alleging disability beginning July 18, 2005, due to multiple cervical discopathies, multiple disc protrusions in the lumbar spine, depression, shoulder pain, knee pain, and anxiety. (AR at 10.) The Social Security Administration denied Plaintiff's applications initially and upon reconsideration. (AR at 74-85.) The matter was heard by an Administrative Law Judge (ALJ), who issued an unfavorable decision on June 16, 2009. Plaintiff sought review of that decision, and in a Memorandum Opinion and Order dated March 9, 2011, this Court reversed the decision and remanded to the Commissioner for further consideration of the opinion of examining physician Thomas W. Jackson, M.D. *See Huerta v. Astrue,* No. EDCV 10-1095, 2011 WL 836660 (C.D. Cal. March 9, 2011).

A new hearing was held before ALJ Sharilyn Hopson on June 22, 2011. (AR at 636.) Plaintiff, who was represented by counsel, testified at the hearing, as did a vocational expert ("VE") and a medical expert. (AR at 636.) The ALJ issued a decision on August 11, 2011, denying Plaintiff's application. (AR at 636-54.) The ALJ found that Plaintiff suffers from the following severe impairments: degenerative disc disease of the entire spine, left shoulder tendinitis, obesity, depression, anxiety. (AR at 639.) Nevertheless, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform a limited range of light work activity.[1] (AR at 640.)

_____

[1] Specifically, the ALJ found that Plaintiff "can lift and/or carry 20 pounds occasionally and 10 pounds frequently; she can stand and/or walk for two hours of an eight-hour workday, 15 minutes at a time, use of a cane as needed; she can sit for six hours out of an eight-hour workday with regular breaks, and the provision to stand and stretch as needed, estimated to require one

Plaintiff commenced this action for judicial review on November 23, 2011. On June 22, 2012, the parties filed a joint statement of disputed issues ("Joint Stip."). Plaintiff contends that the ALJ: (1) failed to properly develop and evaluate the vocational evidence, and (2) improperly assessed her credibility in considering her subjective complaints.[2] (Joint Stip. at 4.) Plaintiff seeks reversal and an award of benefits, or alternatively, remand for further administrative proceedings. (Joint Stip. at 24-45.) Defendant requests that the ALJ's decision be affirmed, or, if the Court finds that the ALJ committed reversible error, that the Court remand for further administrative proceedings. (Joint Stip. at 25-27.)

//

//

//

//

---

to three minutes an[] hour; she can climb stairs, but cannot climb ladders, work at heights or balance; she can do occasional neck motion but should avoid extremes of motion, and her head should be held in a comfortable position the remainder of the time; she can maintain a fixed head position for 15 to 30 minutes at a time, occasionally, she cannot perform above shoulder work on the left and has no limitation on the right side; she is limited to performing simple repetitive tasks."

[2] In Plaintiff's discussion of the second issue, she argues in passing that the ALJ improperly gave great weight to the testimony of Samuel Landau, M.D. who testified at the hearing, over the opinions of other treating or consulting physicians. (Join Stip. at 11.) However, this issue is underdeveloped and lacks any legal analysis, and therefore the Court need not consider it. *See Indep. Towers of Washington v. Washington,* 350 F.3d 925, 929 (9th Cir. 2003)(refusing to address issues not accompanied by legal argument).

3

II.  **STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The Commissioner or ALJ's decision must be upheld unless "the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1990); *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Widmark v. Barnhart*, 454 F.3d 1063, 1066 (9th Cir. 2006). It is more than a scintilla, but less than a preponderance. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1996). "If the evidence can support either affirming or reversing the ALJ's conclusion," the reviewing court "may not substitute its judgment for that of the ALJ." *Robbins*, 466 F.3d at 882.

III.  **Analysis**

A. The Vocational Evidence

At the hearing, the VE testified that someone with Plaintiff's limitations would be able to perform the following three occupations: (1) electronics worker, which carries the number 726.687-010 in the Dictionary of Occupational Titles ("DOT"); (2) Receptionist, with a DOT number of 237.367-046; and (3) Parking Lot

4

Booth Attendant, with a DOT number of 915.473-010. (AR at 653, 688-89.) Based on this testimony, the ALJ concluded that Plaintiff retained the ability to perform jobs existing in significant numbers in the national economy. (AR at 653.)

Plaintiff contends that the VE did not properly identify any occupation that Plaintiff would be able to perform. She argues that the occupation of Electronics Worker requires numerous duties that are incompatible with the standing and head position limitations identified in her RFC. (Joint Stip. at 7.) She also argues that the DOT number provided by the VE for Receptionist actually identifies a Telephone Quotation Clerk, and that Plaintiff is not able to perform either the duties of a Telephone Quotation Clerk, DOT 237.367-046, or those of a Receptionist, DOT 237.367-038. (Joint Stip. 5-6.) Similarly, the DOT number provided by the VE for Parking Lot Booth Attendant actually identifies a Parking-Lot Attendant, an occupation that Plaintiff would be unable to perform. (Join Stip. at 6.) Plaintiff also maintains that it was error for the ALJ to fail to address the VE's testimony that Plaintiff would be unable to sustain work activity if she were taking unscheduled breaks or missing days from of work. (Join Stip. at 8.)

Despite Plaintiff's arguments to the contrary, the VE's testimony that someone with Plaintiff's RFC would be able to perform the occupation of Electronics Worker does not conflict with the DOT. The DOT's description of Electronics Worker includes multiple tasks. (Joint Stip at Ex. D.) While it appears that at least two of the tasks, those involving moving and unloading parts, require standing up and moving, there is no indication that many of the other tasks, such as preparing components and printing, cannot

5

be performed sitting down. As Plaintiff's RFC allows for some mobility, there is nothing inconsistent on its face between the DOT description and Plaintiff's RFC. Similarly, it is not clear from the DOT description that the tasks would be incompatible with Plaintiff's head and neck limitations. There is no indication that the tasks cannot be performed while maintaining a comfortable head position, or that Plaintiff would be unable to switch positions every 15 to 30 minutes. It was reasonable for the ALJ to rely on the VE's testimony that someone with Plaintiff's standing and head and neck limitations could perform the occupation of Electronics Worker, particularly in light of the absence of any obvious contradiction with the DOT description. *See Johnson v. Shalala,* 60 F.3d 1428, 1435 -366 (9th Cir. 1995) (finding it proper for the ALJ to rely on a VE's testimony regarding which available jobs the claimant could perform). Accordingly, the ALJ's finding that Plaintiff could perform the occupation of Electronics Worker was supported by substantial evidence.

As Plaintiff points out in the Joint Stipulation, the DOT number the VE gave for Receptionist actually identifies the occupation of Telephone Quotation Clerk. (Joint Stip. at 5, Ex. A.) The occupation of Receptionist, which carries a DOT number of 237.367-038, is a semi-skilled occupation, and therefore incompatible with Plaintiff's RFC limitation of simple, repetitive tasks. (Joint Stip. at B.) The DOT describes the occupation of Telephone Quotation Clerk as involving telephone calls with customers regarding stock quotations. (Joint Stip. at Ex. A.) Defendant states in the Joint Stipulation that a Receptionist may also be known as a Telephone Quotation Clerk. (Joint Stip. at 9.)

However, the DOT description for 237.367-046 provides alternative names for Telephone Quotation Clerk, and none of them are similar to "Receptionist." (Joint Stip. at Ex. A.) Furthermore, the VE repeatedly referred to the occupation as that of "Receptionist" throughout his testimony and made no reference to the specific duties of a Telephone Quotation Clerk. Therefore, there is nothing to suggest that the VE was actually contemplating the position of Telephone Quotation Clerk when referring to DOT 237.367-046. (AR at 688, 692.) Similarly, it appears that the ALJ did not actually consider whether Plaintiff could perform the duties of a Telephone Quotation Clerk, but rather simply adopted the VE's conclusion. (AR at 653.) While Defendant argues that nothing in Plaintiff's RFC conflicts with the description of a Telephone Quotation Clerk, there is simply no indication that the ALJ actually considered whether Plaintiff could perform this occupation. Instead, it appears that she made her decision based on the mistaken assumption that DOT 237.367-046 denoted a Receptionist, even going so far as to explicitly state that "the [VE's] testimony is consistent with the information contained in the [DOT]." (AR at 653.) Moreover, even assuming that Plaintiff could perform the duties of a Telephone Quotation Clerk, it is unclear whether the VE's testimony on the availability of this occupation in the national and regional economies is accurate, given the ambiguity regarding which occupation he was referencing. Accordingly, it was error for the ALJ based her finding that Plaintiff could perform working existing in the national economy on the assumption that she could perform a job called Receptionist with a DOT number of 237.367-046.

The VE made a similar error in providing the DOT number for

the occupation of Parking Lot Booth Attendant. The number he gave, 815.473-010, refers to a Parking-Lot Attendant. (Join Stip. at C.) There does not appear to be any occupation listed in the DOT called a Parking Lot Booth Attendant. As for Parking-Lot Attendant, the DOT describes this occupation as involving walking around and patrolling parking lot areas. (Joint Stip. at Ex C.) These duties appear incompatible with the standing and walking limitations contained in Plaintiff's RFC.[3] As with the Telephone Quotation Clerk, it does not appear that either the VE or the ALJ specifically contemplated whether Plaintiff could perform the duties of a Parking-Lot Attendant. (AR at 653, 688.) In the absence of any indication that the ALJ attempted to resolve these inconsistencies, it was error for the ALJ to base a finding that Plaintiff was not disabled on the assumption that she could perform the duties of a Parking-Lot Attendant.

Accordingly, it was erroneous for the ALJ to rely on a finding that Plaintiff could perform the jobs of Receptionist or Parking Lot Booth Attendant. Nevertheless, the error is harmless. *See Ludwig v. Astrue,* 681 F.3d 1047, 1054 (9th Cir. 2012) (harmless error rule applies to review of administrative decisions regarding disability); *Tommasetti v. Astrue,* 533 F.3d 1035, 1042-43 (9th Cir. 2008) (same). As discussed above, the ALJ properly found that Plaintiff is able to perform the occupation of Electronics Worker, a position which exists in significant numbers in the national

---

[3] In the Joint Stip., Defendant does not even attempt to argue that Plaintiff would be able to perform this occupation. (Joint Stip. at 10.)

economy.[4] This finding satisfies the final step of the disability evaluation process, which requires the ALJ to determine whether a claimant unable to perform her past work is able to do any other work. *See Gray v. Comm'r*, 365 Fed. App'x 60, 63 (9th Cir. 2010) (affirming ALJ's finding that Plaintiff could find work because, "[e]ven assuming, *arguendo*, that two of the three jobs named by the [VE] . . . were inconsistent with [plaintiff's RFC]," third job was not and was enough to support ALJ's conclusion). Therefore, the ALJ's errors in finding that Plaintiff could perform the occupations of Receptionist and Parking Lot Booth Attendant were harmless and relief is not warranted. *See Tommasetti*, 533 F.3d at 1042-43; *see also Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (defining harmless error as such error that is "irrelevant to the ALJ's ultimate disability conclusion").

Finally, it was not error for the ALJ to fail to address the VE's testimony that if Plaintiff were taking unscheduled breaks or missing work days, she would be unable to perform the identified occupations. Plaintiff's RFC, as determined by the ALJ, did not include the limitation that Plaintiff would be required to take breaks and miss days. (AR at 640.) It was appropriate for the ALJ to present the VE with a hypothetical taking into account only the limitations she identified in her RFC, and to rely on the VE's answers to that hypothetical. *See Magallanes v. Bowen,* 881 F.2d 747, 756-57 (9th Cir 1989) (it is proper for the ALJ to rely on

---

[4] The VE testified that there were approximately 4,000 Electronics Worker positions within the region of Los Angeles, Orange, Riverside, and San Bernardino counties, and 79,000 positions within the national economy. (AR at 653, 688-89.)

VE's response to hypothetical limited to those restrictions supported by the record). While Plaintiff contends that she would need these additional breaks and days off, the ALJ properly determined that Plaintiff's subjective complaints were not fully credible, as discussed more fully below. Accordingly, it was appropriate for the ALJ to ignore the VE's testimony regarding the effect of a need for unscheduled breaks and absences on Plaintiff's ability to work.

**B. Plaintiff's Credibility**

Plaintiff argues that the ALJ failed to properly evaluate her credibility regarding her subjective complaints in determining her RFC. At the hearing, Plaintiff testified that though she works part-time, she would not be able to work more than three hours per day because of pain in her legs, back, and hands. (AR at 680.) She stated that while she is working, she needs to take breaks approximately once per hour for ten minutes each, and tries to take a daily nap. (AR at 680-81.) She also testified that she experiences the following side effects from her prescribed medication: dizziness, fatigue, dry mouth, and thirst. (AR at 677-78.)

To determine whether a claimant's testimony about subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (citing *Lingenfelter v. Astrue,* 504 F.3d 1028, 1035-36 (9th Cir. 2007)). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the alleged pain or other symptoms. *Lingenfelter*, 504 F.3d at 1036. "[O]nce the

claimant produces objective medical evidence of an underlying impairment, an adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc). To the extent that an individual's claims of functional limitations and restrictions due to symptoms are reasonably consistent with the objective medical evidence and other evidence in the case, the claimant's allegations will be credited. SSR 96-7p, 1996 WL 374186 at *2 (explaining 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4)).[5]

Unless there is affirmative evidence showing that the claimant is malingering, the ALJ must provide specific, clear and convincing reasons for discrediting a claimant's complaints. *Robbins*, 466 F.3d at 883. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1996) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996)). The ALJ must consider a claimant's work record, observations of medical providers and third parties with knowledge of claimant's limitations, aggravating factors, functional restrictions caused by symptoms, effects of medication, and the claimant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1283-84 & n.8 (9th Cir. 1996). The ALJ may also employ other

---

[5] "The Secretary issues Social Security Rulings to clarify the Secretary's regulations and policy .... Although SSRs are not published in the federal register and do not have the force of law, [the Ninth Circuit] nevertheless give[s] deference to the Secretary's interpretation of its regulations." *Bunnell*, 947 F.2d at 346 n.3.

ordinary techniques of credibility evaluation. *Id.* (citations omitted).

Here, the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms." (AR at 643.) However, the ALJ rejected as not credible Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms" to the extent they are inconsistent with the ALJ's RFC determination. (AR at 643.) As there was no evidence of malingering, the ALJ was required to provide clear and convincing reasons for rejecting this testimony.

The ALJ provided several clear and convincing reasons for rejecting Plaintiff's testimony. First, the ALJ found that Petitioner's "somewhat normal level of daily activity and interaction" undermined her allegations that she is unable to maintain employment. (AR at 642.) Plaintiff's testimony at the hearing revealed that she performs the following activities on a daily or regular basis: showering and taking care of her personal hygiene; going to work; picking up her children from school; preparing meals; performing household chores, such as mopping and washing dishes; grocery shopping; watching TV; reading books; and attending church. Although a claimant "does not need to be 'utterly incapacitated' in order to be disabled," *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001), the ability to perform certain activities of daily life can support a finding that the claimant's reports of his or her impairment are not fully credible. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009); *Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990) (finding

that the claimant's ability to "take care of her personal needs, prepare easy meals, do light housework and shop for some groceries ... may be seen as inconsistent with the presence of a condition which would preclude all work activity") (citing *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989)).

Similarly, the ALJ found that the fact that Plaintiff has worked following the alleged onset date of her disability indicates that her daily activities have been somewhat greater than she has generally reported. (AR at 641.) In weighing a claimant's credibility, an ALJ may properly consider the claimant's work record. *See Bray v. Astrue,* 554 F.3d 1219, 1227 (9th Cir. 2009) (claimant's allegation of debilitating illness belied in part by fact that "she recently worked as a personal caregiver for two years, and has sought out other employment since then"); *Thomas v. Barnhart*, 278 F.3d 948, 958–59 (9th Cir. 2002) (inconsistency between the claimant's testimony and conduct supported rejection of claimant's credibility). Here, Plaintiff testified that her part-time job involves three hours of chores that she performs while standing. (AR at 681.) It was appropriate for the ALJ to consider that despite Plaintiff's testimony that she suffers from debilitating pain and other conditions that interfere with her ability to work, she has been able to maintain this type of employment.

Third, the ALJ found that Plaintiff had made contradictory statements in the past, which undermined her credibility. (AR at 642-43.) At the previous hearing on October 31, 2008, Plaintiff testified that she had not done any kind of work for compensation since she became disabled in 2005. (AR at 46.) However, Plaintiff

1  did earn money for work in 2006 and 2007. (AR at 269, 671-72, 823.)
2  In addition, there was evidence that Plaintiff had not been
3  forthright in her earlier worker's compensation case, where she
4  failed to reveal her involvement in an off-duty motor vehicle
5  accident pertinent to her case. (AR at 601-05.) It was appropriate
6  for the ALJ to consider these statements in finding Plaintiff not
7  credible. *See, e.g., Smolen*, 80 F.3d at 1284 (ALJ may use ordinary
8  techniques of credibility evaluation, such as considering
9  inconsistent statements and whether claimant has been candid).

10      Finally, the ALJ found that the Plaintiff "has not generally
11  received the type of medical treatment one would expect for a
12  totally disabled individual." (AR at 641.) For example, in 2007 it
13  appears that her only treatment was seeing a chiropractor every
14  couple of months.(AR at 563.) She has never undergone surgery, or
15  even been referred to a specialist for surgery consultation. (AR at
16  625.) The ALJ also noted that Plaintiff's refusal to follow her
17  prescription for Paxil, due to its side effects, demonstrated an
18  unwillingness to improve her condition and could indicate that her
19  symptoms were not as severe as reported. (AR at 676-77.)  An ALJ
20  may properly rely on "unexplained or inadequately explained failure
21  to seek treatment or to follow a course of treatment" in assessing
22  credibility. *See Tommasetti,* 533 F.3d at 1039; *Fair,* 885 at 604
23  (finding that claimant's allegations of persistent, severe pain and
24  discomfort belied by "minimal conservative treatment" and failure
25  to follow doctor's advice).

26      These findings constitute clear and convincing reasons for the
27  ALJ's rejection of Plaintiff's subjective testimony. *Smolen,* 80
28  F.3d at 1284. It is the responsibility of the ALJ to determine

14

credibility and resolve conflicts or ambiguities in the evidence, *Magallanes v. Brown*, 881 F.2d 747, 750 (9th Cir. 1989), and a reviewing court may not second-guess the ALJ's credibility determination when it is supported by substantial evidence in the record, as here. *See Fair,* 885 F.2d at 604. Accordingly, it was reasonable for the ALJ to rely on the reasons stated above in finding that Plaintiff's subjective testimony regarding the severity of her symptoms was not wholly credible.[6]

**IV. Conclusion**

        For the reasons stated above, the decision of the Social Security Commissioner is **AFFIRMED** and the action is **DISMISSED** with prejudice.

Dated: July 12, 2012

_____
Marc L. Goldman
United States Magistrate Judge

---

        [6] To the extent there are other reasons in the ALJ's decision for finding Plaintiff not credible that are not supported by substantial evidence, any error is harmless given that the ALJ provided the above well-supported reasons for not fully crediting Plaintiff's statements. *See Tommasetti*, 533 F.3d at 1038.